**2011 BNH 011  Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:                                                                                     Bk. No. 10-14735-JMD
                                                                                           Chapter 13
Christopher F. Culcasi and
Tara J. Culcasi,
            Debtors

*David P. Azarian, Esq.*
*Azarian Law Office, PLLC*
*Dover, NH*
*Attorney for Debtor*

*Lawrence P. Sumski, Esq.*
*Manchester, NH*
*Chapter 13 Trustee*

## MEMORANDUM OPINION

### I.  INTRODUCTION

Christopher and Tara Culcasi (the "Debtors") filed a petition for relief under chapter 13 of the Bankruptcy Code[1] on November 2, 2010 (the "Petition Date").  The Debtors in this above median case filed an amended chapter 13 plan on January 28, 2011 (Doc. No. 28) (the "Amended Plan") which provided for payments of $200.00 per month for sixty months. Lawrence Sumski, the chapter 13 trustee (the "Trustee"), filed a Motion to Dismiss (Doc. No. 33) (the "Motion to Dismiss") based upon the failure of the Debtors to use all of their disposable income for the benefit of their creditors.  The Court issued an order on April 26, 2011 (Doc. No. 55) (the "Means Test Order") determining that the Debtors' projected disposable income was

---

[1] Unless otherwise indicated, all references to "Bankruptcy Code," "section" or "§" refer to Title 11 of the United States Code, 11 U.S.C. § 101 et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8.

$1,000.15, and not $8.15 as set forth on Form B22C (Doc. No. 1).  On June 6, 2011, the Debtors amended their schedules I and J (Doc. No. 63) (the "Amended Schedules") and filed their second amended chapter 13 plan (Doc. No. 65) (the "Current Plan").  The Amended Schedules show disposable income of $239.29 per month.  The Current Plan provides for payments to the Trustee of $230.00 per month for sixty months for a total of $13,800.00.  On July 15, 2011, the Court held a confirmation hearing during which the Trustee objected to confirmation of the Current Plan raising the following issues: (1) that the Debtors were not applying all of their projected disposable income to the Current Plan in contravention of § 1325(b)(1)(B); (2) that the Debtors impermissibly took a postpetition loan from debtor Tara Culcasi's ("Mrs. Culcasi") 401(k) retirement plan to repay their student loan obligation and now propose to deduct that amount from their disposable income; and (3) that the Debtors cannot rebut the presumption created by the Means Test that they have projected disposable income of $1,000.15 per month, which must be paid into their plan.  After the confirmation hearing, the Court ordered the parties to submit memoranda explaining their position regarding whether or not the presumption created by the Means Test has been rebutted.

      This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.).  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.  FACTS

After the Debtors filed their Amended Plan, the Trustee filed the Motion to Dismiss alleging that the Amended Plan did not adhere to the confirmation requirements of § 1325.  Specifically, the Trustee raised issues regarding the Debtors' calculation of projected disposable income under § 1325(b)(1)(B) and the Amended Plan's discrimination in favor of a student loan claimant.  On February 14, 2011, the Debtors filed an amended schedule J and an objection to the Motion to Dismiss.  After hearing argument from the parties, the Court ordered the parties to file either a stipulation resolving the disposable income dispute or a scheduling order to resolve the dispute.

The Debtors and the Trustee filed a stipulated statement of facts on March 24, 2011, and asked the Court to determine the proper amount of projected disposable income required to confirm the Amended Plan.  After conducting an 11 U.S.C. § 707(b)(2) or Means Test analysis, the Court determined that the Debtors' projected disposable income is $1,000.15 per month.  The Court, however, noted that the projected disposable income under the Means Test only creates a rebuttable presumption, which the Debtors may attempt to rebut during confirmation.  The Court also continued the hearing on the Motion to Dismiss.  The Debtors then amended their schedules I and J and filed the Current Plan.

## III.  DISCUSSION

### A.  Means Test Analysis

The Trustee objected to confirmation of the Current Plan on the basis that the Debtors did not satisfy the provisions of § 1325(b)(1)(B) also known as the best efforts test.

> [Section] 1325 provides that if a trustee or an unsecured creditor objects to a Chapter 13 debtor's plan, a bankruptcy court may not approve the plan unless it provides for full repayment of unsecured claims or provides that all of the debtor's projected disposable income to be received over the duration of the plan will be applied to make payments in accordance with terms of the plan.

Hamilton v. Lanning, 130 S.Ct. 2464, 2469 (2010) (internal quotations omitted).  Generally, courts look to the income calculated by the Means Test to determine whether an above median debtor's proposed chapter 13 plan complies with the requirement in § 1325(b)(1)(B).  The Means Test calculation serves as a snap-shot of the debtor's anticipated disposable income during the life of the chapter 13 plan.  However, "the number resulting from [the Means Test] is a starting point for the Court's inquiry only . . . ."  Kibbe v. Sumski (In re Kibbe), 361 B.R. 302, 311 (B.A.P. 1st Cir. 2007); see also Coop v. Frederickson (In re Frederickson), 545 F.3d 652, 659 (8th Cir. 2008).  The Means Test calculation provides a presumption of projected disposable income unless a party wishing to rebut the presumption can show "that there has been a substantial change in circumstances such that the numbers contained in [the Means Test] are not commensurate with a fair projection of the debtor's budget in the future."  Kibbe, 361 B.R. at 311.  The Court previously determined that the Debtor' projected disposable income was $1,000.15 per month.  However, the Debtors' Current Plan only proposes to pay creditors $230.00 per month over a sixty-month period.  The Debtors' Amended Schedules, which show disposable income of $239.29, present numbers that they believe more accurately portray their circumstances at the time of confirmation.  In order for the Court to confirm the Debtors' Current Plan over the Trustee's objection, the Debtors bear the burden of rebutting the presumption that they can afford to pay creditors $1,000.15 per month.

##### 1. Deduction for 401(k) Loan Repayment

The Debtors' amended schedule I shows a monthly deduction from disposable income of $198.75 to repay a 401(k) retirement loan. After the filing of the chapter 13 petition, and without approval by the Court, the Debtors borrowed money from Mrs. Culcasi's 401(k) retirement plan to pay off a student loan debt thereby incurring an obligation to repay the 401(k) loan. In the Means Test Order, the Court has already ruled that because the Debtors incurred this obligation postpetition, the amount of the loan payment is not excluded from the calculation of projected disposable income under the provisions of § 1322(f).[2] Means Test Order at 5.

While the Debtors acknowledge that § 1322(f) does not apply to a 401(k) loan incurred postpetition, they argue that under the holding in In re Chandler, 210 B.R. 898 (Bankr. D.N.H. 1997), and pursuant to § 1322(b)(5), they would have been able to deduct from disposable income their monthly student loan obligation of $200.00. Since the monthly 401(k) loan obligation is almost equivalent to the monthly student loan obligation, the Debtors argue that excluding the payment would have a negligible impact on distributions to other creditors.

The court in Chandler addressed the issue of whether separately classifying student loan debt as long-term debt under § 1322(b)(5)[3] satisfies the requirement under § 1322(b)(1)[4] of

---

[2] Section 1322(f) provides that "a plan may not materially alter the terms of a loan described in section 362(b)(19) and any amounts required to repay such loan shall not constitute 'disposable income' under section 1325." 11 U.S.C. § 1322(f).

[3] Section 1322(b)(5) provides that "[s]ubject to subsections (a) and (c) of this section, the plan may – notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5)

[4] Section 1322(b)(1) provides that "[s]ubject to subsections (a) and (c) of this section, the plan may designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated . . . ." 11 U.S.C. § 1322(b)(1).

5

prohibiting unfair discrimination between classes of unsecured creditors.  In Chandler, the debtors proposed a chapter 13 plan whereby they would pay their student loan debt outside the plan while the plan paid other unsecured creditors a lesser percentage of their debt.  The court found that discrimination in favor of educational loans based solely on the non-dischargeabile nature of the loan would constitute unfair discrimination within the meaning of § 1322(b)(1) and is impermissible.  Id. at 903.  However, the court held that discrimination in favor of educational loans is not unfair if it is based on the provisions of § 1325(b)(5) which permit a chapter 13 plan to provide for the curing of default and maintenance of payments on long-term unsecured debt.  Id. at 904.  The court reasoned that "this must be the result intended by Congress" in order to give meaning to both §§ 1322(b)(1) and 1322(b)(5).  Id.  The court concluded that, under § 1322(b)(5), "debtors may cure any defaults that exist and may maintain contractual payments as required for long-term unsecured debt" during the term of their plan.  Id.

Here, the Debtors state that, before they paid off their student loan, the maturity date of the student loan obligation was February 2019 and thus their student loan obligation constituted a long-term debt similar to the debt in Chandler.  Accordingly, the Debtors contend that they could have proposed a plan that provided for "maintenance payments" of $200.00 per month towards their student loan obligation as permitted by § 1322(b)(5).  Whether the Debtors could have proposed such a plan is irrelevant because the Debtors did not propose such a plan.  Instead, they unilaterally decided, without notice or court approval, to pay off the student loan using money from Mrs. Culcasi's 401(k) plan.  The Chandler decision specifically states that "[d]ebtors may not accelerate payments or make any payment other than those necessary to cure defaults and keep current on the loan in accordance with the statute."  Id.  As a result, the

Debtors' actions and the Current Plan do not satisfy the test in Chandler.  Rather, through the Current Plan, the Debtors are proposing to use property of the estate, postpetition income,[5] to service an unapproved loan which paid a prepetition claim outside of the chapter 13 plan.

Even if the Court were to consider the Debtors' argument that they could have proffered a plan that provided for the student loan payments outside the plan, it is not a foregone conclusion that every student loan obligation classified as a long-term debt under § 1322(b)(5) automatically satisfies the "unfair discrimination" test in § 1322(b)(1).

> Because the initial clause in section 1322(b)(5) provides that "notwithstanding paragraph (2) of this subsection" the plan may provide for the curing of defaults and maintenance of payments, the Court finds that section 1322(b)(5) must be applied consistently with section 1322(b)(1), which requires that a plan "not discriminate unfairly against any class so designated" as an unsecured creditor class.

Id. (footnote omitted); see also In re Edwards, 263 B.R. 690, 691 (Bankr. D.R.I. 2001) ("literal compliance with § 1322(b)(5) does not relieve debtors of their obligation under § 1322(b)(1)"); In re Coonce, 213 B.R. 344, 347 (Bankr. S.D. Ill. 1997) (every classification of student loan debt as long-term indebtedness does not satisfy the § 1322(b)(1) test of "fair discrimination"). Instead, approval of a separate class for the curing and maintenance of a long-term unsecured debt under the rationale of the Chandler decision would require the Court to conduct a

---

[5] Section 1306 provides that "[p]roperty of the estate includes, in addition to the property specified in section 541 of this title – all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and earnings from services performed by the debtor after commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first." 11 U.S.C. § 1306(a).

comparison, between the dividend available to unsecured creditors with a plan including the student loan obligation as a opposed to paying the obligation outside the plan to determine if the Debtors' proposed discrimination satisfies the "unfair discrimination" test in § 1322(b)(1). Id. at 904.

The Court need not conduct such a comparison or consider what could happen in a hypothetical plan the Debtors might have filed. Instead of proposing to cure and maintain their student loan obligation, the Debtors impermissibly substituted their student loan obligation for Mrs. Culcasi's 401(k) loan. If the Court were to allow such a substitution, "a chapter 13 debtor could, in effect, transfer property of the estate (i.e. post-petition earnings) to pay a post-petition obligation without review or approval of the Court." Means Test Order at 5. This would surely result in "unfair discrimination" under § 1322(b)(1).

The Court finds that the provisions in the Current Plan do not fall within the rationale of the Chandler decision. Accordingly, the payments on the postpetition 401(k) loan are not justifiable as plan payments to a student loan creditor. Because the 401(k) loan was a voluntary, unapproved, postpetition loan, the payments on such a loan may not be used by the Debtors to reduce their presumed disposable income under the Means Test. After adding back the deduction on the Amended Schedules for the 401(k) loan, the Debtors' disposable income is increased from $239.29 per month to $438.04 per month.

### 2. Deductions for Expenses Resulting from Christopher F. Culcasi's Employment

Debtor Christopher F. Culcasi ("Mr. Culcasi") is self-employed and operates a business involving the sale and installation of flooring. According to the Debtors' Amended Schedules, Mr. Culcasi has regular income of $4,000.00 per month with regular expenses of $4,500.00 per

8

month resulting in a net loss in disposable income of $500.00 per month. In item 17 on the Amended Schedules, filed on June 2, 2011, the Debtors do not indicate any anticipated change in Mr. Culcasi's income within the year following that date. Consequently, if Mr. Culcasi ceased working completely, the Debtors would theoretically increase their disposable income by $500.00 per month.[6] The Court is not without compassion or understanding for the difficult economic times facing many small businesses. Nevertheless, debtors are not entitled to be voluntarily underemployed when they are saddled with debt. See Hamilton v. Hemar Ins. Corp. of America (In re Hamilton), 2003 BNH 014 (Bankr. D.N.H. 2003) (where debtor was a practicing attorney but chose to be a teacher instead, court ruled that the debtor's financial circumstances did not afford her the possibility of being employed in a field that is her passion while seeking to discharge her student loan). The Court does not suggest that every self-employment case involving underemployment should be scrutinized, nor does the Court suggest that this is a case where Mr. Culcasi is intentionally underemployed to avoid paying creditors.

      The Debtors are not seeking to confirm a plan based on their current income with a step up in payments as Mr. Culcasi's business income improves. Rather, they are seeking to confirm a sixty-month plan based on his current business income which makes no contribution to family income. If Mr. Culcasi were filing an individual rather than a joint petition, he would not qualify to be a chapter 13 debtor because he does not have regular income. The Debtors' situation is analogous to cases where debtors desire to retain investment property even though the property is losing money. The court in In re Lorenca, 422 B.R. 665 (Bankr. N.D. Ill. 2010) addressed a

---

[6] The Court is aware that there may be other costs associated with ceasing operations of a business.

similar issue in the context of a § 707(b) motion to dismiss.  In that case, the court looked at the debtors' ability to pay creditors to determine whether the case should be dismissed or converted to a case under chapter 13.  Id. at 667.  The debtors in Lorenca devoted payments to a mortgage on their residence and another residential property that provided for a net loss in income.  Id.  The court found that by eliminating the debtors' investment property, the debtors would increase their disposable income by $482.00 per month.  Hence, the debtors were ordered to divest themselves of the investment property.  Id. at 674.

      Here, the Debtors' Amended Schedules report a net loss of $500.00 per month in Mr. Culcasi's income over a five-year period and do not describe any increases or decreases in income or expenses that the Debtors anticipate to occur within the next year.  In other words, the Debtors do not project any change in his business income.  Allowing Mr. Culcasi to stay employed in a losing business effectively forces the Debtors' creditors to subsidize his business while the creditors receive less payment on their claims.  Such a result "would defeat the purpose of the Code which seeks to have debtors pay what they can to creditors."  Id. at 675.  The Court will not order Mr. Culcasi to sell or abandon his business.  However, if the Debtors choose to keep his business, then the projected $500.00 monthly loss must be made up with a combination of expense reductions or greater payments.

      Once the $500.00 per month loss is added back to the Debtors' disposable income on their Amended Schedules, the Debtors' disposable income increases from $438.04 per month to $938.04 per month.  After making the aforementioned adjustments to the Debtors' Amended Schedules, the Debtors' disposable income is a lot closer to the projected disposable income determined to be $1,000.15 per month.  For that reason, the Court concludes that the Debtors

have not met their burden in rebutting the Means Test, their Current Plan does not meet the "best efforts test" of § 1325(b)(1)(B), and all disposable income must be devoted to their Current Plan.

>   B.   **The Good Faith Requirement**

Section 1325(a)(3) provides that "the court shall confirm a plan if – the plan has been proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1325(a)(3). Additionally, § 1325(a)(7) requires the Court to determine that the debtor filed the petition in good faith.  The burden to demonstrate good faith is placed on the debtor.  Sullivan v. Solimini (In re Sullivan), 326 B.R. 204, 211 (B.A.P. 1st Cir. 2005).  The term "good faith" has been left undefined.  Instead, in the First Circuit, good faith is determined on a case-by-case basis using the totality of the circumstances test.  Id.  Courts generally consider the following non-exclusive factors in assessing whether a chapter 13 plan was proposed in good faith:

> (1) debtor's accuracy in stating her debts and expenses, (2) debtor's honesty in the bankruptcy process, including whether she has attempted to mislead the court and whether she has made any misrepresentations, (3) whether the Bankruptcy Code is being unfairly manipulated, (4) the type of debt sought to be discharged, (5) whether the debt would be dischargeable in a Chapter 7, and (6) debtor's motivation and sincerity in seeking Chapter 13 relief.

Id. at 212.  "In employing the totality of the circumstances analysis, the trick seems to be not placing too much weight on any single factor, but in the court's looking at how a number of factors in any given case operate together to betray a plan proposed in bad faith."  In re O'Neill Miranda, 449 B.R. 182, 195 (Bankr. D.P.R. 2011) (internal quotations and citations omitted).

The Trustee argues that the Current Plan may not have been proposed in good faith since the Debtors substituted their student loan obligation with their 401(k) loan in an attempt to shield the funds from their creditors.  The Court agrees that the Debtors attempted to manipulate the Code.  Instead of proposing a plan from the beginning in which the Debtors paid their student

loan debt outside the plan, the Debtors impermissibly took out a postpetition loan from Mrs. Culcasi's 401(k) plan.  After the Trustee objected, the Debtors tried to argue that the Court should overlook their actions because they could have proffered an acceptable plan and, in any event, the payments to the 401(k) loan and student loan obligation are virtually identical.  While the Court does not look kindly on manipulation of the Code, the Debtors did not "unfairly" manipulate the Code as they did disclose, in an addendum to their Current Plan, that they took out a postpetition loan against Mrs. Culcasi's 401(k) to pay off their student loan obligation.  Therefore, the Court concludes the Current Plan is filed in good faith.

## IV.  CONCLUSION

The Debtors' Current Plan provides for payments to the chapter 13 trustee of $230.00 per month for sixty months for a total of $13,800.00.  At the confirmation hearing, the Trustee objected to confirmation raising the following issues: (1) that the Debtors were not applying all of their projected disposable income to the Current Plan in contravention of § 1325(b)(1)(B); (2) that the Debtors impermissibly took a postpetition loan from Mrs. Culcasi's 401(k) retirement plan to repay their student loan obligations and now propose to deduct that amount from their disposable income; and (3) that the Debtors cannot rebut the presumption created by the Means Test.

For the reasons set forth in this opinion, the Court concludes that the Debtors have not rebutted the Means Test presumption, and therefore must devote all of their disposable income as determined in the Means Test Order, i.e., $1,000.15 per month, to their chapter 13 plan.  The Court does find that the Current Plan was proposed in good faith.  However, because the Debtors

do not meet the "best efforts test" in § 1325(b)(1), confirmation of the Debtors' Current Plan shall be denied. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.


Date:   September 7, 2011                            /s/ J. Michael Deasy
                                                     J. Michael Deasy
                                                     Bankruptcy Judge